IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA,

v.  Criminal No.: 3:09CR00452

ROBERT LEE PERNELL,  Defendant.

## SUPPLEMENTAL POSITION IN SUPPORT OF MOTION FOR JUDGMENT OF ACQUITTAL AND/OR NEW TRIAL

Comes now the defendant, Robert Pernell (hereinafter "Pernell"), by counsel, and files his Supplemental Position in Support of Defendant's Motion for Judgment of Acquittal and/or New Trial.

### BACKGROUND

At the conclusion of the trial, the defendant, through his former counsel, filed a Motion for Acquittal or for a New Trial. ECF 53. The United States filed a Response. ECF 57. Thereafter, Pernell's defense counsel, Chris Collins, was allowed to withdraw, and new counsel, Charles Gavin, was appointed. Transcripts were ordered.

### OPENING

Pernell was charged specifically with conspiring to commit a Hobbs Act robbery of **Anwan Jones** and **Keona Peoples** on May 15, 2009. Pernell was also charged with an attempted Hobbs Act robbery of **Anwan Jones** and **Keona Peoples** on May 15, 2009. Lastly, he was charged with using, carrying, brandishing, or discharging a firearm in relation to the attempted robbery of **Anwan Jones** and **Keona Peoples** on May 15, 2009. The United States carefully educated the court on the anticipated evidence in its Notice of Intent to Offer Evidence Pursuant to Federal Rules of Evidence 404(b) and Supporting Memorandum. ECF 31.

The United States indicated that it would rely on, among other things, (1) evidence showing that Pernell was a drug customer of Anwan Jones **and** Taj Gregory, drug dealers who lived at the home where the incident occurred, (2) that in approximately April, 2009, **Taj Gregory** sold crack cocaine to Pernell on approximately five different occasions, and (3) that Pernell later made a statement to a detective wherein Pernell stated that he was called by a friend to "cover his back" while they went into the residence to "straighten out **Anwan**". ECF 31, page 4. **Anwan** had some "messed up money and product".

## FACTS FROM TRIAL TRANSCRIPT

There were ample facts which detailed the forced entry, the drug weight in the house, the money in the house, and the surprise nature of the attack by the two assailants. The following facts pulled from the transcript are designed to focus on the specific issue of whether the government established an intent to rob **Anwan Jones** and **Keona Peoples**.

Anwan Jones ("Jones") lived on Lockett Ridge in Chesterfield County. Tr., page 6. Jones lived there with Taj Gregory. Tr., page 11, lines 18-19.

On May 15, 2009, after enjoying an evening out, Jones and his girlfriend returned to Jones' residence. Tr., pages 13-15. As they went in, they were assailed. Tr., page 16, lines 9-12. The assailants did not have their faces covered, but had on skull caps. Tr., page 18, lines 2-4. Both assailants had firearms. The two assailants forced Jones and Peoples into the house. Tr., page 18, line 13 and page 19, line 1-6. There was drugs and money in the house because both Jones and Taj Gregory were drug dealers. Tr., page 32, lines 4-25.

Jones never served any customers inside this residence. Tr., page 48, lines 14-17. Jones never had friends come over while he was packaging. Tr., page 48, lines 18-21. Jones stayed low key and out of the way. Tr., page 49, 2-4. Jones dealt with approximately 7 customers only. Tr., page 49, lines 9-21. Jones never had issues with any of his customers regarding

money or quality. Tr. page 50, lines 5-8.

On cross-examination, Jones admitted that he did not recognize either of the assailants. Tr., page 60, lines 6-7. Neither assailant had been to the house. Tr. page 60, lines 8-10. Neither assailant said anything, or made any particular demand of Jones. Keona Peoples also did not, however, hear either assailant say anything. Tr., page 98, lines 16-25.

To make a connection between Jones and Pernell, the government then called Taj Gregory, Jones' roommate. Per Gregory, Pernell was a drug client. Tr., page 129, lines 1-3. This client relationship started one month earlier at the Valero gas station on Midlothian Turnpike. Tr., page 129, lines 7-11. Per Gregory, Pernell was looking for an eight ball of crack. Tr., page 129, lines 4-25. An eight ball of crack to Taj Gregory was a small amount. Tr., page 129, lines 24-25. Gregory completed the sale. Tr., page 131, lines 7-9.

Per Gregory, Pernell purchased crack from Gregory an additional four or five times in the month prior to the incident. Tr., page 132, lines 10-11. Per Gregory, around the third or fourth time, Pernell was short on his money. Tr., page 132, lines 18-23. Gregory didn't like this, and did not think highly of Pernell's reliability, and therefore stopped dealing with Pernell. Tr., page 133, lines 7-24. Pernell no longer had a phone number for Gregory. Tr. page 133, lines 14-29. All of the transactions, according to Gregory, were at the same Valero, or the Pep Boys beside the Valero on Midlothian Turnpike. Tr., page 131, lines 22-25.

Gregory conceded that Pernell had never been to his house. Tr. page 146, lines 3-16. Gregory never showed Pernell where he lived. Tr. page 148, lines 23-24. Gregory never told Pernell where he lived. Tr. page 148, line 25. Most importantly, Gregory testified that he had made a mistake when he had previously advised an officer that Pernell bought drugs from both Gregory **and** Jones. This revelation was contrary to the government's principle theory, i.e., that Pernell had a direct drug purchase connection to Jones. Accordingly, in order to understand the

relevance of Gregory's testimony involving separate drug transactions with Pernell, to a robbery of Jones and Peoples, on a different date, time, and place. The court stated:

> THE COURT: Do you agree that the only value that it [Gregory's testimony] has is to be probative of the interstate commerce connection?
>
> MS. NORMAN: I do not agree that that's the only things it's probative of.
>
> THE COURT: Well, what else is it probative of and how does it get there?
>
> MS. NORMAN: Well, No. 1 is knowledge.
>
> THE COURT: Of what?
>
> MS. NORMAN: Well, knowledge of the drug trafficking trade and knowledge that somebody - - I mean, this was not a randomly selected house.
>
> THE COURT: He knows - - it is certainly probative, the evidence we know about is certainly probative that Mr. Pernell knew that Mr. Gregory was involved in the drug trafficking trade. This is probative though, it ms to me, only of the interstate commerce nexus, not of - - I guess, other than he could know that as a seller of drugs there was some money around.
>
> MS. NORMAN: Well, that's part of it, but the other part of it is that Mr. Pernell made the statement to the detectives that he went to that house to back up his friend because Anwan had some messed up product and messed up money. It shows knowledge that messed up product and messed up money referred to drugs, not to chickens or grass.
>
> THE COURT: Yeah, but that's a statement that he made to somebody else about Jones. It doesn't have anything to do with Gregory.
>
> MR. COLLINS: There's no evidence that he knows Jones and Gregory even know each other.

>THE COURT: At this juncture, I don't see that evidence. Maybe there's somebody else. I can understand the motive and the knowledge component of it if there was some evidence that Gregory and Jones worked together or lived together, but I haven't heard that. That's what I was waiting for and I didn't hear it.
>
>I am going to give them the instruction that's probative of interstate commerce and that's all.
>
>MR. COLLINS: Thank you Judge.

The last particularly relevant testimony from the transcript came from Detective Brad Conner. Brad Conner testified that when he went to visit Pernell in the hospital, Pernell made a statement wherein Pernell indicated that he had been called by a friend to come over and cover his back while they went to the residence to "straighten out Anwan" [Jones]. Tr. page 331, lines 16-27. Mr. Pernell purportedly stated that "Anwan had some messed up money and product, and that his friend was going over there to take care of it". Tr. page 331, lines 16-23. The problem with Detective Conner's direct testimony, however, was that, upon cross-examination, Detective Conner admitted that Pernell, in his statement, did <u>not</u> specifically use the name "Anwan". Tr. page 338, lines 9-13. Per Detective Conner, Pernell may have actually just said "he". Detective Conner actually did <u>not</u> recall Pernell actually saying "Anwan". Tr., page 338, lines 12-13.

Detective Conner went further by explaining his regular operating procedure which was that he would <u>not</u> provide a victim's name in an interview. Accordingly, based on Conner's standard procedure, Pernell more than likely did not use the name "Anwan" in the statement. Tr., page 338, pages 14-19.

## ARGUMENT

The legal standards of review and the elements have been appropriately stated by the parties in their papers (ECF53 and ECF57). Pernell adopts and incorporates the prior arguments made by prior defense counsel (ECF 53) into this paper.

In this case, Pernell was charged with conspiring and attempting to rob **Anwan Jones** and **Keona Peoples** on May 15, 2009. Pernell was not charged with conspiring, or attempting to rob Taj Gregory.

Per the transcript, Pernell was unknown to Jones. Pernell had never been to Jones' residence. Jones had never sold drugs to Pernell. Accordingly, there was no evidence that Pernell ever knew Jones to carry drugs or money, or lived in the residence. There were no statements actually admitted into evidence reflecting statements made by Pernell to Jones during the incident. Jones never served any customers inside of his residence. Jones never had any customer disputes over money or quality of product.

Even Gregory agreed that Pernell had not been inside the house, had not seen the house, and had not even been told where the house was located.

Accordingly, in order to make a connection between Pernell and the attempted robbery of Jones and Peoples, other than the general evidence regarding the nature of the entry, the time of day, the presence of money, etc., the government was forced to rely heavily on the lone statement made purportedly by Pernell to Detective Conner. In its Position Paper, the government does just that by arguing "The defendant later admitted to being at the house with a friend, to "cover his back," when he "straightened out" **Jones** who had "messed up money and product." See ECF 57, page 6. The government further argued, "a rational trier of fact could find that the defendant and his co-conspirator's intent was to straighten **Jones** out by taking **Jones**' money and/or drugs from his person, against his will by force". See ECF 57, page 6.

Even the court noted:

> It's a reasonable inference to draw that he knew that **Jones** was a drug dealer because he was going over to straighten out both money and product, and the testimony is that product means drugs. It may not have meant it to him, but that's a credibility fact issue to be decided. (emphasis added)

> And his <u>own statements</u>, I think, together with the other evidence in the case would permit a jury to find beyond a reasonable doubt that he was interfering with interstate commerce by intending to deprive the owner of assets that were used in the drug dealing trade. And that's the import and meaning of Williams. And it seems to me that the government's evidence is satisfied. (emphasis added)

The problem with this inference, based on Pernell's own statement, as relied upon by the United States, and even as commented by the court, is that the statement made by Pernell to Detective Conner was <u>not</u> specific to Jones. Detective Conner correceted his prior testimony by confirming that, if anything, the statement was generically about a "he". Accordingly, any inference at all must be based on a statement which is more in line with (1) "he" messed up some money and product and (2) Pernell accompanied a friend to the house to straighten out "him". The question then becomes who is this "he"? Why is there any reason to make the inference that the "him" was Jones? The short answer is that there is none. Frankly, a better interpretation of the inference, if it is to be made, would be that Pernell was referring to Gregory, because he had had prior drug dealings with Gregory. This inference to Gregory would actually have been supported by Jones' testimony insofar as, according to Jones, Jones <u>never</u> messed up his money, or his product.

Regardless, the actual statement, if placed in the proper context using the pronoun "he", does not support an inference of Pernell's intent to rob Jones, or Peoples, which is how the defendant was indicted. The statement, placed in proper context, does not support any inference that Pernell knew where Jones lived, knew that Jones sold drugs, knew that Jones had

money at the location, or had heard that Jones, specifically, had messed up his money or product.

Accordingly, prior defense counsel's position is well taken in that, even assuming that there was ample evidence to prove that Pernell was at the scene, engaged in the entry, engaged in the criminal conduct, there is no evidence that the defendant intended to rob, specifically, Anwan Jones and/or Keona Peoples. The only inference that could be fairly made, in a light most favorable to the government, is that Pernell intended to "straighten out" some unknown "he" staying at residence, occupied by unknown persons, without any corroborating testimony to make the connection between Pernell and a specific intent to rob Jones and Peoples. The government did not meet its burden and the Motion for Judgment of Acquittal should be granted.

                          Respectfully Submitted,
                          Robert Lee Pernell

                          /s/
By: _____
      Of Counsel

Charles A. Gavin
Virginia State Bar #31391
Counsel for Robert Lee Pernell
Cawthorn, Deskevich & Gavin, P.C.
1409 Eastridge Road
Richmond, Virginia 23219
(804) 288-7999
(804) 288-9015 Facsimile
cgavin@cawthorn.net

**CERTIFICATE**

    I hereby certify that on November 20, 2013, I will electronically file the foregoing with the Clerk of Court using the CM/ECT system which will then send a notification of such filing (NEF) to the following:

Olivia L. Norman, Esquire
Assistant United States Attorney
600 E. Main Street, Suite 1800
Richmond, Virginia 23219

                                                       /s/
                                        _____
                                        Charles A. Gavin
                                        Virginia State Bar #31391
                                        Counsel for Robert Lee Pernell
                                        Cawthorn, Deskevich & Gavin
                                        1409 Eastridge Road
                                        Richmond, Virginia 23219
                                        (804) 288-7999
                                        (804) 288-9015 Facsimile
                                        cgavin@cawthorn.net