IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.                                    Criminal Case No. 3:09CR452

ROBERT LEE PERNELL,

                    Defendant.

### MEMORANDUM OPINION

This matter is before the Court on Defendant's MOTION FOR ACQUITTAL OR FOR A NEW TRIAL (Docket No. 53) ("Motion"). To the extent that the Motion seeks a new trial, it will be granted. To the extent that the Motion seeks a judgment of acquittal, it will be denied.

### PROCEDURAL BACKGROUND

On December 15, 2009, Robert Lee Pernell ("Pernell") was charged in a three-count Indictment in the Eastern District of Virginia, Richmond Division. Count One charged Pernell with Conspiracy to Interfere with Commerce by Threats and Violence (a Hobbs Act robbery), in violation of 18 U.S.C. § 1951; Count Two charged Pernell with Attempted Interference with Commerce by Threats and Violence and Aiding and Abetting, in violation of 18 U.S.C. §§ 1951 and 2; and Count Three charged Pernell with Use, Carry, Brandish, and Discharge a Firearm During/In Relation to a

Crime of Violence, specifically the Hobbs Act robbery, in violation of 18 U.S.C. § 924(c).

At the time of the Indictment, Pernell was being held on pending charges in the City of Richmond so the United States lodged a detainer against him. He was sentenced on those charges in February 2010. While he was serving that sentence, on October 17, 2012, a Petition and Order for Writ of Habeas Corpus ad Prosequendum was issued, and Pernell was thereafter delivered to federal custody for trial on the Indictment.[1] William H. Sooy was appointed as counsel for Pernell and, on November 17, 2012, Pernell made his initial appearance, was arraigned and entered not guilty pleas to all three counts. A jury trial was initially scheduled to begin on February 4, 2013, but it had to be continued because Pernell became dissatisfied with court-appointed counsel and decided to have his family retain counsel.

Christopher J. Collins was retained to represent Pernell. The trial was rescheduled for April 30, 2013 to allow new counsel time to prepare and to accommodate his existing client commitments.

---

[1] Pernell completed serving his state sentence on April 16, 2013, while he was in the physical custody of the United States Marshals Service on the Writ.

Pernell was convicted of all three counts in the Indictment. On June 3, 2013,[2] Pernell filed, by counsel Collins, Defendant's MOTION FOR ACQUITTAL OR FOR A NEW TRIAL (Docket No. 53), and the United States responded (Docket No. 57)("U.S. Resp."). Thereafter, Pernell submitted a pro se letter dated July 15, 2013 notifying the Court that he no longer wanted to be represented by Collins and that he intended to retain other counsel. A hearing was held, and Collins was relieved as counsel. Pernell was given the opportunity, as he requested, to retain new counsel by August 9, 2013. However, because Pernell failed to retain new counsel by that date, the Court appointed Charles A. Gavin as counsel for Pernell. Counsel Gavin ordered a transcript of the trial and filed a SUPPLEMENTAL POSITION IN SUPPORT OF MOTION FOR JUDGMENT OF ACQUITTAL AND/OR NEW TRIAL (Docket No. 85)("Def.'s Supp'l Pos."), and the United States filed the UNITED STATES' RESPONSE TO DEFENDANT'S SUPPLEMENTAL MOTION FOR ACQUITTAL OR FOR A NEW TRIAL (Docket No. 87)("U.S. Supp.").

The arguments in Pernell's supplemental briefs mirrored those in the initial motion for judgment of acquittal or, alternatively, for a new trial. In his briefs and in the oral arguments, Pernell made much of the contention that the Court

---

[2] By Order of May 2, 2013, the Court extended the time by which the Defendant was required to file a motion pursuant to Fed. R. Crim. P. 29(c). See Docket No. 45.

had erred in denying Pernell's motion for mistrial.   Therefore, at oral argument on March 20, 2014, the Court ordered additional briefing (Docket No. 111) on the oral motion for a mistrial made during the trial, and whether the denial of the motion was an additional or alternative ground for a new trial. The United States filed its second supplemental response, entitled UNITED STATES' RESPONSE TO DEFENDANT'S MOTION FOR MISTRIAL (Docket No. 115)("U.S. 2d Supp'l Resp."), and Pernell filed his SECOND SUPPLEMENTAL REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR A MISTRIAL (Docket No. 118)("Def.'s 2d Supp'l Reply").

## EVIDENCE AT TRIAL

The Government's case was relatively straightforward. Anwan Jones and Taj Gregory resided in a house on Lockett Ridge Road.   Anwan Jones and Keona Peoples were the victims of the attempted robbery.   Anwan Jones, like Taj Gregory, was a drug dealer.   Peoples was Jones' girlfriend.   Both testified that when they arrived at the home at approximately 2:00 a.m., two armed men dressed in black came from behind the house, brandishing firearms and attempting to force their way inside. Jones testified that the men shouted something like, "You know what time it is? (Unintelligible) the money."   Jones struggled with the men at the front door, but they gained entry, whereupon Jones ran to a neighboring house. Peoples ran to the downstairs

bedroom where there was a firearm. One of the men, later
identified as Pernell, followed Peoples to the bedroom with a
shotgun in hand. However, by that time, Peoples had located the
pistol in the bedroom and fired it toward the intruder. One of
the bullets struck Pernell who then fled, along with the other
man. Jones testified that the drugs and the money in the house
belonged to him and his partner, Taj Gregory, with whom he
shared the house. The parties stipulated that the cocaine found
in the house had been manufactured in a state other than
Virginia.

The United States also presented testimony from law
enforcement officers and forensic investigators. The law
enforcement officers explained that they had been dispatched to
the scene because of the reports about the gunfire at the house.
Upon arrival, they found Anwan Jones outside the house and
Peoples hiding in the bedroom closet with the pistol that she
had fired at Pernell. The forensic investigators confirmed that
bullets and cartridge casings were recovered from inside the
house; that a single cartridge casing was found outside the
house; and that the bullet holes in the walls of the house
confirmed Peoples' version of the shooting. The spent
cartridges in the house were from the gun fired by Peoples. The
cartridge outside the house was from a different weapon. The
forensic investigators testified about the location of blood on

the floor in the apartment and on the steps to the porch.   That blood was later identified, through DNA testing, as Pernell's. A search of the house turned up more than $125,000 in U.S. currency and approximately 116 grams of crack cocaine.

To identify Pernell as one of the two men who entered the Lockett Ridge Road residence, the Government called Petersburg Police Captain[3] Edwin S. Jones who testified that, on May 15, 2009, he travelled to the Southside Regional Medical Center after having received a report that a person there had a gunshot wound.   The person who had been shot identified himself as "Frank Williams," and he told Captain Jones that he had been shot in Petersburg.   Although Captain Jones knew of no reported shooting that night in Petersburg, he was aware of the shooting on Lockett Ridge Road.   This discrepancy and "Frank Williams'" refusal to provide the identity of the person who shot him made Captain Jones suspicious that Pernell may have been the person who had been shot at Lockett Ridge Road.

Thus, Captain Jones left to further investigate, and he instructed the hospital staff to alert him if anyone came to the hospital asking to see a man with a gunshot wound.   Later in the day, Captain Jones was told by a member of the hospital staff that such an inquiry had been made about a man named Pernell.

---

[3] At the time he testified, Jones was a captain in the Petersburg Police Department.   At the time of the incident, Jones was a lieutenant.   (Tr. 219-20.)

Shortly thereafter, during a rambling discourse about efforts he had made to properly identify the man in the hospital who called himself "Frank Williams," Captain Jones said:

> I ran it [the information from hospital personnel] through NCIC and VCIN, which is the system that we run people that are wanted through, nationally and locally, through the state. That then came up under that name [Pernell] wanted seven times, robbery related, out of the city of Richmond. RPD also had put an alert on there [the NCIC record], 'armed and dangerous.'

The Court sustained a defense objection to these statements, and instructed the jury to disregard the testimony, stating:

> Ladies and gentlemen, disregard the testimony about what the record was. Just don't pay any attention to that. But the fact that Captain Jones ran the record is pertinent and what he found is pertinent to identifying and linking the person Frank Williams with the name Robert Pernell that he was looking for if you make that connection in the next question.

Having secured Pernell's name through the hospital staff and confirmed it in the NCIC and VCIN reports, Captain Jones used a data base within the Department of Motor Vehicles to secure a copy of Pernell's driver's license. The photograph on the driver's license confirmed that "Frank Williams" was in fact Pernell. Then, Captain Jones recited that, at about the same time, officers from Richmond "had brought the warrants to me, and I was going to serve them [on Pernell]." There was no objection from the defense to this testimony.

After Captain Jones finished testifying, the defense, at sidebar, made a motion and argued for a mistrial based on the testimony about the results of the NCIC/VCIN search. After considering whether there was "a manifest necessity for terminating the proceedings or the interest of justice would otherwise be defeated," or "whether giving of a curative instruction or a less drastic alternative is appropriate," the Court concluded that the statements could be corrected "with a limiting instruction" and denied the motion for a mistrial. However, the Court agreed to give another instruction to the jury to disregard Captain Jones' statements when it instructed the jury at the conclusion of the case.[4]

---

[4] During the jury instruction phase of the case, the jury was instructed as follows:

Now, there was a government witness, Lieutenant Jones, who referred to the content of an NCIC report about the defendant. An NCIC report is a database – is the result of a database, and it merely sets out allegations. I direct you to disregard the testimony about what was in the report, because what the witness said about the content of the report isn't probative of any issue that you have to decide in the case and, thus, you must not consider what he said about what was in the report, the content of the report in deciding if the Government has proven the defendant guilty of the charges in the indictment.   And, the defendant was not convicted of any of the allegations mentioned by the defendant as reported in the report.

You can consider the NCIC report, therefore, only to understand the evidence respecting whether the defendant was the person who identified himself as Frank Williams at the Southside Regional Medical Center on May 15th of 2009, for that was the purpose,

The Government also introduced the statement given verbally by Pernell to Chesterfield Police Detective David Clayton. Pernell told Clayton that he "didn't try to kill two people that day."

Five days later, Clayton and Conner returned to the hospital with a search warrant for a buccal swab, to collect a DNA sample from inside the mouth of Pernell. After the buccal swab was taken, Pernell asked to speak to Conner, who testified that Pernell then volunteered the information that "he [Pernell] had been called by a friend to come and 'cover his back' while they went to the residence on Lockett Ridge to straighten out Anwan." Pernell added that "Anwan had some 'messed up money and product,' [and] that his friend was going over there to take care of it." Upon further questioning by the prosecutor and later by defense counsel, Conner conceded that he could not recall whether Pernell mentioned "Anwan" by name or merely used the word "he." Pernell admitted to Conner that he had been in the house on the night that he had been shot.

---

and the only legitimate purpose, that that evidence was admitted.
The Court also instructed the jury, "Keep constantly in mind that it would be a violation of your sworn duty to base a verdict upon anything other than the evidence received in the case and these instructions." The jury was also instructed, "Any proposed testimony or proposed exhibit to which an objection was sustained by the Court and any testimony or exhibit ordered stricken by the Court must be entirely disregarded."

The proof also included evidence about the effect on interstate commerce. Taj Gregory testified that he and Jones were cocaine traffickers and that the attempted robbery affected their cocaine trafficking business. The parties stipulated that the cocaine in the Lockett Ridge Road house was not made in Virginia. Gregory also testified that he had distributed crack cocaine to Pernell on several occasions in the month before the attempted robbery, but the sales were not made from the house on Lockett Ridge Road. That evidence was offered to prove the element of affecting interstate commerce and to show that Pernell knew what the term "product" meant in the drug trade.

The foregoing evidence was the predicate for the jury's decision. The motions, of course, must be assessed against that evidence and in perspective of the way that the case was tried and argued. In particular, it is necessary to recall that Pernell never contested that he was present at Anwan Jones' house on Lockett Ridge Road on May 15, 2009 or that he had been shot by Peoples during the home incursion. Nor was there any real dispute about the version of events as explained by Anwan Jones and Peoples. Rather, it was the position of the defense at trial, as it is here, that there was insufficient evidence to prove the intent element of the charged crimes, i.e., that there was no proof of intent to commit robbery.

## DISCUSSION

### A.   Motion for Judgment of Acquittal

Under Fed. R. Crim. P. 29(c)(1), "[a] defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later."  If the jury returned a guilty verdict, "the court may set aside the verdict and enter an acquittal."  Fed. R. Crim. P. 29(c)(2).  Entry of judgment of acquittal is appropriate where "the evidence is insufficient to sustain a conviction."  Fed. R. Crim. P. 29(a).  "A judgment of acquittal based on the insufficiency of evidence is a ruling by the court that as a matter of law the government's evidence is insufficient 'to establish factual guilt' on the charges in the indictment."  United States v. Alvarez, 351 F.3d 126, 129 (4th Cir. 2003) (quoting Smalis v. Pennsylvania, 476 U.S. 140, 144 (1986)).

"A defendant challenging the sufficiency of the evidence to support his conviction bears 'a heavy burden.'"  United States v. Beidler, 110 F.3d 1064, 1067 (4th Cir. 1997) (citation omitted).  In the Fourth Circuit, the well-settled test is "whether there is substantial evidence (direct or circumstantial) which, taken in the light most favorable to the prosecution, would warrant a jury finding that the defendant was guilty beyond a reasonable doubt."  United States v. MacCloskey,

682 F.2d 468, 473 (4th Cir. 1982) (citing United States v. Dominguez, 604 F.2d 304, 310 (4th Cir. 1979), cert. denied, 444 U.S. 1014 (1980); United States v. Stroupe, 538 F.2d 1063, 1066 (4th Cir. 1976)).  "[S]ubstantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996).  Accordingly, if "after viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the elements of the offense beyond a reasonable doubt," the jury's verdict must stand.  United States v. United Med. & Surgical Supply Corp., 989 F.2d 1390, 1402 (4th Cir. 1993)(citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)).  "In applying this standard, [the Court] must remain cognizant of the fact that the jury, not the reviewing court, weighs the credibility of the evidence and resolves any conflicts in the evidence presented, and if the evidence supports different, reasonable interpretations, the jury decides which interpretation to believe." Burgos, 94 F.3d at 862. "'Circumstantial evidence is not inherently less valuable or less probative than direct evidence' and may alone support a guilty verdict." United States v. Martin, 523 F.3d 281, 289 (4th Cir. 2008)(quoting United States v. Williams, 445 F.3d 724, 731 (4th Cir. 2006)).  Further, the government is not required to

rule out every hypothesis of innocence. See Inge v. Procunier, 758 F.2d 1010, 1014 (4th Cir. 1985)(declining to apply the Virginia evidentiary rule that requires the Commonwealth to exclude every reasonable hypothesis of innocence on collateral review of sufficiency of evidence); Jackson v. Virginia, 443 at 326 (noting that the prosecution was not "under an affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt" and that it had rejected this theory).

Pernell's argument for a judgment of acquittal is that there was insufficient evidence of his intent to rob the victims. (Motion, Docket No. 53, at 1.) More precisely, Pernell argues that there was "no such proof in the Government's case." (Id.) "Nowhere is there evidence at all, let alone beyond a reasonable doubt, that the method of 'straightening out' [a drug dealer for having 'messed up money and product'] was to be robbery." (Id. at 2.) He argues that, given what Jones told Conner, it is just as likely, if not more so, that the object of the home incursion was to kill Anwan Jones, or to threaten or intimidate him, or to assault and injure him. (Id. at 2-3; Def.'s Supp'l Pos., Docket No. 85, at 6-8.)

Taken in the light most favorable to the government, the evidence is sufficient to sustain the verdict. Pernell and his friend forced their way into the house. They shouted something like, "You know what time it is?" and something that included

the phrase, "the money."  Pernell admitted to Detective Conner that "he [Pernell] had been called by a friend to come and 'cover his back' while they went to the residence on Lockett Ridge to straighten out Anwan," and that "Anwan had some 'messed up money and product,' that his friend was going over there to take care of it."  That Conner later admitted that he could not recall if Pernell mentioned "Anwan" by name or simply said the word "he" weakens the Government's case.  But, it does not negate the other circumstantial proofs of the intent to rob element.  Hence, to the extent that the Motion calls for judgment of acquittal, it will be denied.

**B.    Motion for a New Trial and Motion for Mistrial**

Upon motion of the defendant, "the court may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  Whether to grant or deny a motion for a new trial is within the broad discretion of the district court.  "[T]he meaning of the phrase 'in the interest of justice' in the context of Rule 33 is not difficult to discern; the phrase's plain meaning makes unmistakably clear that granting a new trial is discretionary, and the cases reflect that this discretion should be exercised where it is demonstrated that the fundamental fairness or integrity of the trial result is substantially in doubt."    United States v.

Jennings, 438 F. Supp. 2d 637, 642 (E.D. Va. 2006), aff'd, 496
F.3d 344 (4th Cir. 2007).

"The court's authority is broader under Rule 33 than under
Rule 29, and it may weigh evidence and evaluate the credibility
of witnesses in determining whether to grant a new trial."
United States v. Jackson, 2006 WL 1587457, *1 (W.D. Va.
2006)(citing United States v. Indelicato, 611 F.2d 376, 387 (1st
Cir. 1979)).

The evidence offered to support the conviction was
circumstantial. Although the evidence was sufficient to send
the case to the jury, the verdict could have gone either way.
In sum, it was a close case. Because Pernell's briefs and
arguments in support of a new trial focused in no small part on
the effect of Captain Jones' testimony in perspective of the
quite limited evidence about the intent element, the Court has
construed Pernell's argument, in part, to be that the Court had
erred in failing to grant the motion for mistrial and that a new
trial was necessary for that additional reason.

"It is well settled that a grant or denial of a motion for
mistrial is within the sound discretion of the trial court, and
will not be overturned absent a clear abuse of that discretion."
United States v. Dorsey, 45 F.3d 809, 817 (4th Cir.
1995)(internal citations omitted). "In order for the trial
court's ruling to constitute such an abuse of discretion, the

defendant must show prejudice; no prejudice exists, however, 'if the jury could make individual guilty determinations by following the court's cautionary instructions.'" Id. (quoting United States v. West, 877 F.2d 281, 287-88 (4th Cir. 1989), cert. denied, 493 U.S. 959 (1989)). Moreover, unless the prosecution has purposely introduced inadmissible prejudicial evidence, the courts generally have discerned no reversible error where the trial court has acted promptly in sustaining an objection and advising the jury to disregard the testimony." Id. (quoting United States v. Johnson, 610 F.2d 194, 196-97 (4th Cir. 1979), cert. denied, 446 U.S. 911 (1980)). Nonetheless, "[w]hether prejudicial error has been committed must be determined on the basis of the record in its entirety and the result will generally turn on the facts of each case." Id.

Captain Jones disclosed to the jury that Pernell was wanted in Richmond in relation to seven robberies and that he was considered armed and dangerous. Jones also testified that he was going to serve the outstanding arrest warrants issued by Richmond on Pernell. No objection was made to the latter statement, and no cautionary instruction was given.

Considering the robbery-related charges that Pernell faced here, the testimony that Pernell was wanted in connection with seven other robberies was clearly prejudicial. And, that evidence was inadmissible. The Court attempted to remedy the

prejudice by giving curative instructions just after the evidence was given and at the final jury charge. Having reviewed the trial transcript, the Court is not convinced that the giving of curative instructions was sufficient to eliminate the prejudice caused by Captain Jones' testimony about the content of the NCIC and VCIN records. That is especially so given the subsequent testimony by Captain Jones that he was serving Pernell with arrest warrants from Richmond, testimony that linked the fact of arrest with the previous testimony of Captain Jones that Pernell was wanted in Richmond for seven armed robberies. The effect of that evidence was to resurrect in the minds of the jury the very evidence that the Court had just instructed the jury to disregard. The curative instructions did not address that testimony. Of course, there was no objection to it, but, because the effect was to ameliorate the Court's curative instructions, the Court should have acted to sort out the matter. That did not happen.

Captain Jones' evidence, had it been admissible, would have been highly probative on the intent to rob element. See Fed. R. Evid. 404(b)(1). In other words, what Captain Jones said could have tipped the balance in a very close case and on the key component of Pernell's defense: insufficient proof of the intent to rob element.

17

It is, of course, true that juries are presumed to follow the limiting instructions of the Court. United States v. Francisco, 35 F.3d 116, 119 (4th Cir. 1994); see also Richardson v. Marsh, 481 U.S. 200, 211 (1987) ("[J]uries are presumed to follow their instructions."); United States v. Ince, 21 F.3d 576, 584 (4th Cir. 1994) ("[W]e recognize the presumption of cure by a court's instruction.").

But, it is also true that to disregard evidence is difficult. Indeed, it has been described as "a mental gymnastic which is beyond, not only their powers [referring to the jury], but anybody else's." Delli Paoli v. United States, 352 U.S. 232, 247 (1957). (Frankfurter, J., dissenting). Justice Frankfurter's comments in dissent are not the controlling law, but they do illustrate the difficulty of a jury's task where it is told to disregard certain evidence.

That difficulty makes it quite important that the curative message from the Court to the jury be clear. Here, the failure to instruct the jury to disregard the testimony about the arrest warrants issued by Richmond operated to vitiate the previous curative instruction to disregard the testimony that Pernell was wanted for armed robbery in Richmond. Under those circumstances in this very close case, the Court must conclude that the integrity of the trial result is substantially in doubt.

Accordingly, the motion for a new trial will be granted.

## CONCLUSION

For all these reasons, the MOTION FOR ACQUITTAL OR FOR A NEW TRIAL (Docket No. 53) will be denied to the extent that it seeks judgment of acquittal and granted to the extent that it seeks a new trial.[5]

It is so ORDERED.

/s/

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date:  May 15, 2014

---

[5] Pernell is advised that the result was first urged by Counsel Collins and that this ruling would have been made sooner had Pernell not discharged Counsel Collins and filed a bevy of irrelevant meritless motions pro se.